UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENDRA VELZEN AND
FAIR HOUSING CENTER OF WEST
MICHIGAN,

        Plaintiffs,

                                    File No. 1:12-CV-321

v.

                                      HON. ROBERT HOLMES BELL

GRAND VALLEY STATE
UNIVERSITY, et al.,

        Defendants.

_____/

**O P I N I O N**

On March 30, 2012, Plaintiffs Kendra Velzen and the Fair Housing Center of West Michigan ("FHCWM") brought suit against Defendants Grand Valley State University ("GVSU"), Grand Valley State University Board of Regents ("GVSU BOR"), Andy Beachnau, Brenda Mitchner, Leena Karsan, and Kathleen Vanderveen alleging unlawful discrimination under the Fair Housing Act ("FHA"), Federal Rehabilitation Act, and Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). (Dkt. No. 1.) All claims brought against the individual defendants were brought against them in their official capacities as GVSU administrators. (*Id.*) Plaintiffs seek both injunctive and compensatory relief. (*Id.*)  This matter is before the Court on Defendants' motion, on May 17, 2012, to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1), lack of subject matter jurisdiction, and 12(b)(6), failure to state a claim upon which relief can be

granted.  (Dkt. No. 7.)  For the reasons that follow, this motion will be granted in part and denied in part.

## I.

Velzen began treatment for depression in 2007 with therapist Merrill E. Graham, a licensed master social worker, clinical social worker, and registered physical therapist.  (Dkt. No. 1, ¶ 28.)  To manage her depression, Velzen has relied upon the attachment and emotional support she derives from animals.  (*Id.* at ¶ 30.)  In 2009, Velzen was diagnosed with severe neurologically mediated cardiac arrhythmia and had a pacemaker implanted.  (*Id.* at ¶ 29.)  In August 2011, before Velzen moved on-campus at GVSU, where she was a student, Graham formally prescribed an emotional support animal for Velzen.  (*Id.* at ¶ 30.)

Velzen moved into Calder Residence, an apartment-style building on campus, owned and operated by GVSU, on August 24, 2011, bringing with her a letter from Graham and her guinea pig, Blanca.  (*Id.* at ¶ 36-39.)  The letter explained Velzen's depression and heart condition, and it concluded that "the use of a comfort object, such as Blanca, is a necessary means of controlling stress and managing symptoms."  (*Id.* at ¶ 37.)  Graham added that "[t]he presence of Blanca provides Ms. Velzen with continued emotional support and attachment (thereby reducing symptoms of depression), physiological benefits (such as decreased heart rate), and psychological benefits (such as increased Oxytocin levels, which directly impact the sense of life satisfaction)."  (*Id.*)

That evening, Mitchener's secretary emailed Velzen, granting her temporary permission to keep the guinea pig for the evening but requesting a meeting the next day.  (*Id.* at ¶ 40.)  On August 25, Velzen met with Karsan who told her that her request to live with the guinea pig was denied because it was not a trained service animal.  (*Id.* at ¶ 42.)  In response, Velzen enlisted the help of the FHCWM.  With its help, Velzen met with Mitchner on September 12 and made another request for accomodation.  (*Id.* at ¶ 42.)  Mitchner told Velzen that GVSU's federal obligations were outlined by the Americans with Disabilities Act ("ADA").  (*Id.* at ¶ 47.)  Because Velzen did not have a physical impairment, GVSU denied her request on September 16.  (*Id.* at ¶ 48.)

From that date until October 19, 2011 employees of the FHCWM conducted research, investigated GVSU's policies, and consulted with counsel "[n]early every business day." (Dkt. No. 9, Ex. 1, Aff. of Nancy Haynes, at ¶ 15.)  The FHCWM asserts that work on this matter "diverted a significant amount of FHCWM resources and resulted in delays in other projects and open case files."  (*Id.* at ¶ 17.)  On September 30, Velzen formally filed a complaint of unlawful discrimination with the Michigan Department of Civil Rights ("MDCR"). (Dkt. No. 1, at ¶ 59.)  Three days later, GVSU gave Velzen permission to bring the guinea pig back into her residence.  (*Id.* at ¶ 60.)  GVSU contends that it "approved" Velzen's accommodation request at this time (Dkt. No. 8, ¶¶ 25-27), but Haynes and Velzen assert that GVSU stood by its policy and characterized it as an "interim exception" and "temporary" (Dkt. No. 9, Ex. 1, Aff., at ¶ 16).

3

Velzen and the FHCWM brought suit in this Court on March 30, 2012. (Dkt. No. 1.) Since then, Velzen has moved out of Calder Residence as scheduled in April 2012, and cancelled her application for on-campus housing for the Fall 2012/Winter 2013 school year.

## II.

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be based on either a facial attack or a factual attack on the allegations of the complaint. *Tri–Corp Mgmt. Co. v. Praznik,* 33 F. App'x 742, 745 (6th Cir. 2002). When the Court reviews a factual attack on subject matter jurisdiction, no presumption of truthfulness applies to the factual allegations of the complaint. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994); *Hirt v. Richardson*, 127 F. Supp. 2d 849, 852 (W.D. Mich. 2001). The Court may rely on affidavits or any other evidence properly before it and has wide latitude to collect evidence to determine the issue of subject matter jurisdiction. *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir. 1986). "If, on the other hand, an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should 'find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). Under this scenario, "the defendant is forced to proceed under Rule 12(b)(6) . . . ." *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. "[T]o survive a motion to dismiss [under 12(b)(6)], the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). In reviewing such a motion, the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs and Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). As a general rule, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent*, 583 F.3d at 903.

According to the Supreme Court, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 545 (2007) (internal quotations omitted). While detailed factual allegations are not required, the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

5

## III.

### A. 12(b)(1) Claims

Defendants' 12(b)(1) defense is properly characterized as a factual attack. (Dkt. No. 8, at 7.) Defendants make three arguments: (1) the actions taken by the parties prior to the filing of the instant action render it moot; (2) FHCWM's actions are insufficient to grant it standing; and (3) the Eleventh Amendment and sovereign immunity bars the FHA and PWDCRA claims against the institutional defendants in their entirety, and against the individual defendants to the extent the claims seek compensatory damages. (*Id.* at 7-9.)

The first argument will be examined under 12(b)(1) to the extent it concerns Velzen and her decision to move out of on-campus housing *following* the filing of the instant action. However, whether the actions of any of the parties prior to the filing of this suit made this action moot is necessarily a question intertwined with the merits of Plaintiffs' claims. Thus, these actions will only be discussed under 12(b)(6). The second and third arguments were properly brought under 12(b)(1).

### I) Mootness of Velzen's Claims for Injunctive Relief

Defendants argue that Velzen's claims for injunctive relief are necessarily moot because she has moved out of on-campus housing. (Dkt. No. 8, at 13.) Under the U.S. Constitution, federal courts only have subject matter jurisdiction to hear "cases or controversies." U.S. Const. art. III, § 2, cl. 1. "If events occur during the case . . . that make it 'impossible for the court to grant any effectual relief whatever to a prevailing party,' the [case] must be dismissed as moot." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d

711, 713 (6th Cir. 2011) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

Defendants' theory of mootness centers on Velzen's decision not to live in on-campus housing for the Fall 2012/Winter 2013 school year. (Dkt. No. 10, at 3.) Consequently, they conclude that an injunction requiring Defendants to provide her with accommodation would not provide her any meaningful relief. (*Id.*) In reliance, Defendants cite *Fialka-Feldman*, a case in which the Sixth Circuit dismissed an appeal of a preliminary injunction as moot when the plaintiff-student moved out of on-campus housing. (*Id.*) This reliance is misplaced. The reason the injunction was found moot in *Fialka-Feldman* was because the plaintiff completed his program at the university, became a non-student, and left the school. *Fialka-Feldman*, 639 F.3d at 714. In fact, the Court explicitly stated that only once "he signaled no intent to return," did it become the case that "an injunction meant nothing to the University and required nothing of it." *Id.*

Here, Velzen is still a student. She has "not ruled out" the possibility of living on-campus in a future year. (Dkt. No. 9, at 17.) Moreover, at least part of the reason she chose to not live on campus during the present school year was fear that GVSU would take away her temporary exception to live with her guinea pig. (*Id.*)

Defendants dispute the conclusion that this is enough to create a current controversy. (Dkt. No. 10, at 3.) In support, they rely on *Murphy v. Hunt*, 455 U.S. 478 (1982), in which the Supreme Court noted that there is a general exception to the mootness doctrine for cases "capable of repetition, yet evading review." *Id.* at 482. To satisfy this exception, the

complaining party must show that there is a "reasonable expectation" or a "demonstrated probability" that it will be subject to the same action again. *Id.* But a "mere physical or theoretical possibility" is insufficient. *Id.* Defendants conclude that Velzen's claims that she might return to campus are too speculative to constitute a reasonable expectation. (Dkt. No. 10, at 3.) In support, they cite to an October email and an April letter which they argue give no suggestion that Velzen would not continue to be accommodated.

Notably, however, in both of these letters the language granting the accommodation was specifically limited to Calder Residence. (*See* Dkt. No. 8, Attach. 1, Exs. B, C.) There is no indication whatsoever in these documents that an accommodation would be granted at a different residence hall or for a period of occupancy covering a future term. Moreover, GVSU never changed its policy against accommodations for emotional assistance animals, meaning that if Velzen returned to on-campus housing, she would once again have to seek a special exception with no guarantee that she could keep her guinea pig. Based on this policy and GVSU's prior handling of Velzen's attempts to obtain an accommodation, the Court is convinced that Velzen has a "reasonable expectation" that if she returns to on-campus housing she will be denied an accommodation.

Consequently, having examined the evidence presently before it, the Court finds that Velzen's claims for injunctive relief are not moot.

### ii) FHCWM's Standing

Defendants also argue that the FHCWM lacks standing. This issue will first be addressed in regard to the FHA and then in regard to the Rehabilitation Act.

8

A fair housing organization that alleges "concrete and demonstrable injury to the organization's activities" has standing under the Fair Housing Act. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  Such injury can be shown by "frustrat[ion of] the organization's counseling and referral services, with a consequent drain on resources." *Id.* However, this drain on resources must be independent from the resources spent in the present lawsuit, although costs incurred before litigation do count. *Hooker v. Weathers*, 990 F.2d 913, 915 (6th Cir. 1993); *Fair Housing Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 475 (6th Cir. 2006) ("Though we require a plaintiff to show some injury that is independent of the costs of litigation, we have interpreted that standard narrowly, finding that costs related to prelitigation investigation can form the basis for standing."). Additionally, "the Sixth Circuit has repeatedly held that organizational standing requires some investigation on the part of the organization." *Ctr. For Comty. Justice and Advocacy v. RBS Citizens, N.A.*, 776 F. Supp.2d 460, 467 (E.D. Mich. 2011).

Plaintiffs have provided significant details to establish the FHCWM's injury. Haynes's affidavit states that from August 25, 2011, until October 19, 2011, employees of the FHCWM conducted research, investigated GVSU's policies, and consulted with counsel "[n]early every business day."  (Dkt. No. 9, Ex. 1, Aff., at ¶ 15.)  Additionally, the FHCWM asserts that work on this matter "diverted a significant amount of FHCWM resources and resulted in delays in other projects and open case files."  (*Id.* at ¶ 17.)  This included assisting Velzen with the complaint to the MDCR and diverting staff from normal job duties to respond to public inquiries and to engage in public outreach to correct the alleged

9

misinformation spreading as a result of GVSU's policies.  While no presumption of truthfulness applies to these factual allegations under 12(b)(1), Defendants have not provided any evidence disputing them.

Instead, Defendants make conclusions without providing any evidentiary support. First, they argue that all of this research into the legal obligations of GVSU did not constitute an independent investigation.  This bald assertion lacks support and is not convincing. Similarly unconvincing is the bald argument that the action did not divert money from the FHCWM's other activities.  Defendants also argue that there is no injury because all of the FHCWM's actions in this matter fit within its mission.  While that fact is true, Defendants cite no case law that an organization's activities and use of resources must be outside of its mission to constitute an injury in fact.  Defendants are similarly unpersuasive in arguing that injunctive relief would not redress the FHCWM's injuries.  If Plaintiffs are successful in this case, then the FHCWM's limited resources and time will no longer be so disproportionately constrained to a single housing issue, allowing it to better carry out its mission and serve more people.  Consequently, the Court finds that the FHCWM has standing under the FHA.

As for the Rehabilitation Act, an organization must show more than an indirect injury to establish standing.  "For an organization to bring an action in its own right, the organization must have been discriminated against or denied a benefit conferred by the ADA or the Rehabilitation Act because of its association with a qualified individual with a disability."  *Autism Soc. of Mich. v. Fuller*, No. 5:05-CV-73, 2006 WL 1519966, at *16 (W.D. Mich. May 26, 2006) (Quist, J.).  The FHCWM has not alleged any facts to show that

10

it meets this standard. However, the FHCWM urges the Court to adopt the approach followed by the Ninth Circuit and district courts in California and Pennsylvania, which have found standing for housing organizations bringing claims under the Rehabilitation Act solely on a showing of diversion of resources and advocacy efforts. (Dkt. No. 14 (citing *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1115 (9th Cir. 1987); *Nat'l Org. on Disability v. Tartaglione*, No. CIV.A.01-1923, 2001 WL 1231717, at *4 (E.D. Pa. Oct. 11, 2001)).) The Court finds the analysis in *Fuller* persuasive and declines to adopt the approach followed by the courts cited by Plaintiffs. Consequently, the FHCWM lacks standing to bring claims under the Rehabilitation Act.

### iii) Sovereign Immunity

Defendants also argue that Plaintiffs' claims under the FHA and PWDCRA against the institutional defendants (for compensatory damages and injunctive relief) and against the individual defendants (for compensatory relief) are barred by sovereign immunity. (Dkt. No. 8, at 9-12.)

States have immunity against suits brought by citizens. U.S. Const. amend. XI.3. Unless a state consents to be sued, any suit brought in federal court by a citizen against the state or a state agency, whether requesting injunctive relief or compensatory damages, is barred by the Eleventh Amendment. *See Papasan v. Allain,* 478 U.S. 265, 276 (1986). GVSU, as a public university, and the GVSU BOR, as a state agent, are protected from suit by this sovereign immunity.

11

GVSU and GVSU BOR have not consented to suit under the FHA or PWDCRA, and neither statute abrogates the state's sovereign immunity. *See Morris v. Dehaan*, No. 90-2190, 1991 WL 177995, at *3 (6th Cir. Sept. 21, 1991); *Jones v. Mich. Dep't Of Corr.*, No. 1:09-CV-508, 2012 WL 3609384, at *4 (W.D. Mich. Sept. 10, 2010). Thus, Plaintiffs' claims against GVSU and GVSU BOR under the FHA and PWDCRA will be dismissed.

Individuals sued in their official capacities are also protected by sovereign immunity from compensatory damages, because such damages would ultimately be paid from state funds. *E.g. Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945); *Martin v. Univ. of Louisville*, 541 F.2d 1171, 1177 (6th Cir. 1976). Consequently, Plaintiffs' claims against the individual defendants for compensatory damages will be dismissed. However, Plaintiffs' claims against these defendants for injunctive relief will remain. *See Ex parte Young*, 209 U.S. 123, 160 (1908); *Uttila v. Tenn. Highway Dep't*, 208 F.3d 216 (6th Cir. 2000).

Plaintiffs also seek relief under the Rehabilitation Act. However, no party disputes the fact that sovereign immunity does not bar the claims against all defendants under this act for both injunctive and compensatory relief.

**B.  12(b)(6) Claims**

**I) Velzen's Claims under the Rehabilitation Act**

According to the Sixth Circuit, a plaintiff can succeed on a Rehabilitation Act claim by showing (1) intentional action on the basis of the disability, (2) failure to provide reasonable accommodation, or (3) disparate treatment. *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460-61 (6th Cir. 1997); *see also Washington v. Ind. High*

*Sch. Athletic Ass'n, Inc.*, 181 F.3d 840 (8th Cir. 1999). Plaintiffs seek relief for failure to provide reasonable accommodation and disparate treatment. Defendants allege that Plaintiffs have not pleaded sufficient facts to support either claim.

### a. Failure to Accommodate

An organization that receives federal funding violates § 504 of the Rehabilitation Act if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services. *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 909 (6th Cir. 2004) (citing *Alexander v. Choate*, 469 U.S. 287, 301-02 (1985)).

Defendants make two arguments in support of their claim that Plaintiffs cannot show failure to accommodate under the Rehabilitation Act: (1) there can be no recovery of compensatory damages because Defendants were not deliberately indifferent to Velzen; and (2) the Rehabilitation Act only requires accommodations to be provided for trained service animals.

First, they point out that a plaintiff cannot recover compensatory damages under the Rehabilitation Act without showing intentional discrimination. "Although intentional discrimination is not an element of a prima facie case [under the Rehabilitation Act], a plaintiff must prove intentional discrimination in order to obtain compensatory damages." *Tanney v. Boles*, 400 F. Supp.2d 1027, 1047 (E.D. Mich. 2005) (citing *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152-1153 (10th Cir.1999)). However, intentional discrimination may be inferred from "a defendant's deliberate indifference to the strong

likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers*, 184 F.3d at 1153. "Deliberate indifference is more than a collection of sloppy, or even reckless, oversights." *Hill v. Bradley,* 295 F. App'x 740, 742 (6th Cir. 2008).

Defendants argue that because they made an accommodation for Velzen within 30 business days of knowing about her need to keep a guinea pig, it would be impossible for Velzen to show deliberate indifference. (Dkt. No. 8, at16.) "Although a delay in granting a reasonable accommodation may support a disability discrimination claim, the delay must be unreasonable for it to be actionable." *Edmunds v. Bd. of Control of E. Mich. Univ.*, No. 09-11648, 2009 WL 5171794, at *5 (E.D. Mich. Dec. 23, 2009). "In analyzing the delay, courts 'consider the length of the delay, the reasons for the delay, whether the [program] has offered any alternative accommodations while evaluating a particular request, and whether the [program] has acted in good faith.'" *Id.* (quoting *Hurston v. Butler Cty, Dep't of Jobs & Family Servs*., No. 1:01–CV–313, 2005 WL 2416566, at *8 (S.D. Ohio Sept.30, 2005)).

In reviewing a 12(b)(6) motion, the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs*, 922 F.2d at 330. While Defendants' delay was less than the three months in *Edmunds*, Plaintiffs have alleged that they acted in bad faith. (Dkt. No. 9, at 20-22.) They allege that Defendants knew or should have known of their obligations and intentionally disregarded the detrimental effect their policies were having on Velzen. (*Id.*) Further, they allege that, rather than engaging in an evaluative

14

process, GVSU outright denied Velzen's multiple requests for accommodation without ever following up with her therapist. (*Id.*) Accordingly, they contend that the only reason GVSU eventually granted her accommodation was because of legal pressure after Velzen filed a complaint with the MDCR. (*Id.*) Lastly, they allege that the October accommodation, despite occurring within 30 business days of her initial request, was deemed temporary, leaving Velzen worried that GVSU might withdraw it at any time. (*Id.*) While GVSU offers a different story, and disagrees with all of these claims, for the purposes of 12(b)(6) the Court must accept Plaintiffs' allegations as true. If Plaintiffs can prove all of these facts, then Velzen would be entitled to compensatory damages.

Alternatively, Defendants contend that Plaintiffs cannot make out a claim for failure to accommodate, because GVSU complied with the ADA, which only requires animal accommodations for trained service animals. According to this argument, the ADA is analyzed under the same standard as the Rehabilitation Act, so compliance with one necessarily means compliance with the other. (Dkt. No. 8, at 17-18.) In support, Defendants rely on *Thompson v. Williamson County*, 219 F.3d 555, 557 (6th Cir. 2000): "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." However, since *Thompson* was decided, the ADA has been revised, meaning that under present law, compliance with the ADA may not relieve Defendants' obligations under the FHA or Rehabilitation Act.

To show that this is the case, Plaintiffs rely on statements made by the Department of Justice ("DOJ") when it revised the ADA's regulations to exclude emotional support animals

from the definition of service animals.  *See* 28 C.F.R. § 35.104 (2011).  In 2010, the DOJ explained that "emotional support animals that do not qualify as service animals under the Department's [revised] title II [ADA] regulation may nevertheless qualify as permitted reasonable accommodations for persons with disabilities under the FHAct."  75 Fed. Reg. 56164, 56166 (Sept. 15, 2010).  Plaintiffs' reliance on this statement is misplaced.  At most this only shows that Defendants may be liable under the FHA.

    That being said, Plaintiffs can still make out a claim under the Rehabilitation Act. The DOJ final rule, as codified in the federal register, plainly states that "this part shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973." 28 C.F.R. § 35.103.  Additionally, it states "[t]his part does not invalidate or limit the remedies, rights, and procedures of any other Federal, State, or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them." *Id.*  Even further clarifying these revisions, the United States Department of Housing and Urban Development sent out a memorandum to all of the Fair Housing and Equal Opportunity Regional Directors and Regional Counsel explaining the new DOJ rules:

> The DOJ's new rules limit the definition of "service animal" in the ADA to include only dogs. The new rules also define "service animal" to exclude emotional support animals. This definition, however, does not apply to the FHAct or Section 504 [of the Rehabilitation Act]. Disabled individuals may request a reasonable accommodation for assistance animals in addition to dogs, including emotional support animals, under the FHAct or Section 504 [of the Rehabilitation Act].  In situations where both laws apply, housing providers must meet the broader FHAct/Section 504 standard in deciding whether to grant reasonable accommodation requests.

Memorandum from Sarah K. Pratt, Deputy Assistant Secretary for Enforcement, *New ADA Regulations and Assistance Animals as Reasonable Accommodations* (Feb. 17, 2011), available at http://www.disabilityrightsohio.org/node%252F1203.

Consequently, regardless of the new stricter standards under the ADA for service animals, Plaintiffs may still make out a claim under the Rehabilitation Act for failure to accommodate emotional support animals.   Plaintiffs have pleaded sufficient facts establishing that the Rehabilitation Act may have been violated by Defendants' alleged failure to accommodate and that this behavior may have been deliberately indifferent.[1]

### b. *Disparate Treatment*

Defendants also argue that Plaintiffs cannot establish a prima facie case of disability discrimination.  To make out such a claim, a plaintiff must show the following:

> (1) The plaintiff is a 'handicapped person' under the Act; (2) The plaintiff is 'otherwise qualified' for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of [her] handicap; and (4) The relevant program or activity is receiving Federal financial assistance."

*Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988).  Defendants contend that Velzen has not shown that she was excluded from participation or denied the benefits of on-campus housing.  They point out that it is undisputed that Velzen was offered and provided on-campus housing the same as any other student.  (Dkt. No. 1, at 34-35.)

---

[1] Defendants allege that Plaintiffs' FHA claims would "similarly fail" under these arguments. (Dkt. No. 8, at 18 n.7.)  Because these arguments are not convincing in regard to the Rehabilitation Act claims, the Court will not re-discuss them in the context of the FHA claims.  Those claims are thus also preserved.

Plaintiffs have not contested this argument, and it does not appear from the pleadings that Plaintiff can show that she was excluded from participating in on-campus housing. While the alleged failure to accommodate might have led to a constructive denial of the benefits of on-campus living (making Velzen feel uncomfortable and leading to her choice to live off campus despite a desire to stay on campus), that does not establish disparate treatment on the part of GVSU. Indeed, there is every appearance that GVSU treated Velzen the same as every other student in on-campus housing. Thus, Plaintiffs' claims relating to disparate treatment under the Rehabilitation Act, (*see* Dkt. No. 1, ¶ 78(a)), will be dismissed.

## IV.

In conclusion, the following claims will be dismissed: (1) all claims under the PWDCRA against all defendants; (2) all claims for compensatory damages under the FHA brought against all defendants; (3) all claims for injunctive relief under the FHA brought against the institutional defendants; (4) all claims for relief under the Rehabilitation Act by the FHCWM; and (5) all claims for relief under the Rehabilitation Act by Velzen that depend on disparate treatment.

The following claims remain: (1) Velzen and the FHCWM's claims under the FHA seeking injunctive relief from the individual defendants; and (2) Velzen's claims against all defendants for compensatory damages and injunctive relief under the Rehabilitation Act pursuant to the failure to accommodate theory.

An order consistent with this opinion will be entered.

Dated: October 10, 2012          /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          UNITED STATES DISTRICT JUDGE